And our third case of the day is Mazen Agha v. Uber Technologies, Appeal No. 24-1749. Mr. Friedman.  May it please the court, good morning. I'm Rob Friedman for Appel and Uber Technologies, Inc. I would like to reserve four minutes for rebuttal. The district court correctly compelled three of the four plaintiffs to individual arbitration and enforced their arbitration agreements as written. Instead, it rejected the plaintiffs' arguments that later opt-outs somehow supersede or invalidate their earlier agreements to arbitrate that cover past, present, and future claims. And the district court enforced a class-action right. The sole basis for denying the motion to compel is that Plaintiff Zurich was the district court's erroneous ruling on collateral estoppel based on an earlier state court case in which Zurich was the only plaintiff. Collateral estoppel does not apply. So Plaintiff Zurich, like the other three plaintiffs, must be compelled to individual arbitration. We're asking this court to reverse the district court's holding as to Zurich and to compel individual arbitration of all of Zurich's claims under the 2020 arbitration provision that he agreed to. With respect to collateral estoppel, Your Honors, there are two independent bases for reversal. First, the state court addressed a different issue. Whether the 2020 arbitration provision required plaintiff to arbitrate his dispute with Uber, while it expressly acknowledged it was not deciding the enforceability of the 2020 arbitration provision, which is at issue in this appeal. Second, Your Honors, the state court did not address the FAA and is completely silent as to the FAA. At the state and district court, Uber moved to compel arbitration under the FAA. The district court acknowledged the state court did not decide Uber's motion under the FAA, but incorrectly held that the FAA is irrelevant and also improperly speculated, quote, as a matter of fact, that Uber perhaps could have, but apparently chose not to raise the federal law argument in support of its motion. Uber did, however, raise the FAA at the state court. Your Honors, with respect to collateral estoppel under Illinois law, it requires several factors. One of them is the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding. And you say that they're different because the state court was interpreting the 2020 contract, not the 2022 contract. No, Your Honor, the opposite. They were interpreting the 2022, not the 2020. That's the operative contract. They ignored the 2020 contract, said we don't need to consider that at all. Right, and they were – that was based on their interpretation of the provision in the 22 contract that says that any prior agreements to arbitrate kind of still exist, right? Well, no, Your Honor, the opposite. I wish there had been interpretation. They did not interpret it at all. Instead, they ignored the language, and I think that's critical, Your Honor, to read that. Any opt-out of this agreement – this is a 2022 agreement. Any opt-out of this arbitration agreement does not affect the validity of any other arbitration agreement between you and us. If you opt out of this arbitration provision at any time of your receipt of this agreement, you are bound by an existing agreement to arbitrate disputes arising out of related to use of a platform and driver app. That existing arbitration agreement will remain in full force in effect. So, Your Honor, he opted out of the 2022 agreement. The 2022 agreement expressly says that if you opt out, the previous agreement still applies. And the 2020 agreement critically says it applies to past, present, and future. This is simply a matter of contract interpretation, Your Honor, and instead of interpreting as Your Honor asked, the state court did not interpret. Instead, it substituted its own judgment, anti-arbitration bias. But at any rate, Your Honor, yes, we think the state court was wrong, but more critically, we're not here to say the state court was wrong even though it was. We're here to say that the federal court misapplied collateral estoppel. Judge Kohler, I'm sorry, I think you have a question. Why wouldn't that just go to the preclusive effect of the prior judgment? Because part of what's at issue here is, in fact, the 2022 agreement. Why shouldn't that at least have a preclusive effect? Your Honor, in order for collateral estoppel to apply, there are several factors. And one is the identical issue must have been presented. Another one, I want to point this out to the court, is— But that issue is here. There might be other issues as well. So why wouldn't that go to the breadth of the preclusive effect? If you have one claim that has preclusive effect, one claim that doesn't, you don't just say, well, it's not the same issue, no preclusive effect, correct? Your Honor, we moved in the federal court to apply the 2020 arbitration agreement. That's what we did in the federal court. We did exactly the same thing in the state court. We asked them to enforce the 2020 arbitration agreement. The state court did not even consider the 2020 arbitration agreement, yet the federal court held, well, there's preclusive effect because all the factors are met. The point we're trying to make is the factors cannot be met because it's not identical. And there's something I want to point out very critically from Gambino v. Kuntz, a 2014 Seventh Circuit case in Orells v. Coker. It says, in addition, the party sought to be bound must actually have litigated the issue in the first suit, and a decision on the issue must have been necessary to the judgment in the first litigation. Here's the problem, Your Honor. The state court said it is not necessary to address whether plaintiff actually received the 2020 PAA, as the current dispute did not arise while the 2020 PAA was in effect. But didn't the state court go on to address the effect of the 2022 opt-out on the 2020 PAA? No, Your Honor, it didn't. It solely— It had to, though, didn't it? Well, Your Honor, it didn't. It says, and I'm referring to page 4, it says it is not necessary to address whether plaintiff— I'm with you. I'm with you. It's not necessary to address whether Zurich actually received and agreed to the 2020 PPA. Your Honor, yes. But— The state court looked at the 2022, and in reading only the 2022, it made a decision we don't even have to look at the 2020. And we believe that was error, but more critically for purposes of our appeal, Your Honor, the federal court made the same mistake, essentially. But didn't it address—didn't the state court and the district court address the effect of the 2022 opt-out on the 2020 PAA? Your Honor, well, yes and no. And isn't that the issue here, though? Well, let me actually answer with respect to the federal court. The federal court disagreed with the state court because AGA also opted out, and the federal court did what it should do, which is to read the agreement as written. So as an initial matter, the federal court disagreed. With respect to the state court, it's our position that simply saying the effect of the 2022 is not good enough. It has to be necessary. It has to be necessarily decided. And another factor that has to be considered and has been considered by Illinois courts in the Seventh Circuit is clarity and certainty. It could not be said that it was necessary to the decision when the state court only looks to the 2022 agreement and completely ignores the 2020 agreement. But it doesn't—that's my question. How does it completely ignore the 2020 agreement when it decides the effect of the 2022 agreement on the 2020 agreement? It's not ignoring the 2020 agreement. Your Honor, perhaps a better way to say—they don't even mention the 2020. They completely—they only talk about the 2022, and then they read the 2022 agreement as to somehow impact the 2020 agreement. But isn't that what— Now I'm looking at the 2020. But I'm—like, I think that's what you're asking us to do. I think you're asking us to take the 2022 agreement and decide what effect it has on the 2020 agreement. In other words, what effect does the 2022 opt-out have on the 2020 agreement? And that's precisely what the state court did. Your Honor, the fact that they came to a similar outcome as the federal district court is not good enough. It has to be clarity and certainty, and the very language of the state court order says we're not even looking at it. So for them to look at the 2022 and say, well, we don't have to look at the 2020, is improper. They have to look at the 2020, Your Honor. They can't simply look at a subsequent document. And by the way, again, we think they got it wrong as did the federal court, but irrespective. We're talking about two separate agreements, Your Honor. One is the 2020, one is the 2022, and the state court said we're not even going to look at the 2020 agreement. Therefore, we cannot have that level of clarity and certainty, and I don't know how this court, or I don't know how the district court, could reconcile the standard that it has to be necessary to the judgment when the state court—they don't telegraph this to us. They don't insinuate this. They flat-out say it is not necessary to decide it. But counsel, isn't that just because of the decision tree that the state court went down? I mean, there's two ways to do this. There's the way that you and Judge Pinelli have agreed or correct to say that the subsequent opt-out leaves in place whatever the parties had agreed to in the earlier provisions, the earlier agreements. There's another way to read this, and it's the way the state court read it. And that way says, well, if you opted out, you opted out of everything, so I don't need to look at those other things. It's not saying it's not there. It's not saying I'm ignoring it. It's just saying as a matter of interpretation, I don't think I need to reach that issue. Your Honor, there may be different ways to read it, but there's proper ways to read it under this court's standard and state court for collateral estoppel. And I'm not disagreeing with you. I don't think Judge Pinelli is disagreeing with you on the appropriate way to read the opt-out in the 2022 agreement. My point is the contrary reading, the contrary analysis just simply means you don't need to get to the other agreements. Your Honor, we don't – first of all, the plaintiffs, the apt-to-leaves bear the heavy burden to show collateral estoppel. It's a very heavy burden because it is an equitable doctrine to avoid unfair results. And we move under a certain agreement, the 2020 agreement, and the state court doesn't even look at it. So the bottom line is I understand your perspective that maybe they got to the right way in some manner. But sort of getting to the right manner, the fact that some issues overlap is not how collateral estoppel applies. It has to be the identical issues. What worries me is your – the position that you're arguing. Wouldn't that wind up with a rule that any time there are multiple dispositive issues, if a court rules on the exact same case or the exact same claim and decides not to get to other dispositive issues, that you can essentially say there's no collateral estoppel? Your Honor, that is the rule under Smith. And the rule is Illinois courts will not apply collateral estoppel where there are multiple independent bases that could have supported the outcome of the earlier case. And they have to articulate with accuracy what happened. But this is the same basis. It's just a different way to get to the analysis. But it's applying a different arbitration agreement, Your Honor, that has different language. The other issue I want to point out also, Your Honor, in addition to looking at a different agreement, which we maintain is dispositive, the state court also did not apply the FAA, which is critical. Now, even our opponent, my colleague, admits that while state law generally – not generally – applies to formation, that doesn't mean that the FAA is out of the picture altogether. And Kindred, the Supreme Court case of 2017, addresses that very issue. Although state court addresses formation, offer, acceptance, whatnot, the FAA provides a mandate. My colleague acknowledges that mandate. The FAA was before the state court, and they completely ignore it. And that's critical because the mandate requires the FAA still applies to formation. That's exactly what happened in the Kindred case. West Virginia applied – or maybe Kentucky, excuse me – applied a standard that only applied to arbitration agreements. And that's why it was critical that the state court should have looked at the FAA. If they had looked at the FAA, they may have gotten this right. Instead, the state court substituted its judgment and said, absurd results. Your Honors, if this had been something else besides an arbitration agreement, we'd like to believe the state court would have applied the agreement as written. It is critical under the FAA that an arbitration agreement be enforced as written. It did not do that, and it did not do that because it did not apply the FAA, which we asked it to do. And the federal court did exactly the same thing, Judge Kotler. It said, we don't have to look at the FAA because state court governs formation. And while it is true that state law governs formation, it does not change the reality of the fact as stated by the U.S. Supreme Court that the FAA still has a place in formation, and the state court did not apply that, and the federal court said, we do not have to go to that. So for those two independent reasons – and I do want to come back to the separate – Mr. Friedman, you're well into your rebuttal time. I just want to make sure that you're aware. You know what? Thank you, Your Honor. I'm going to sit down then, unless you have any other questions, and I will come back to rebuttal. Thank you, Your Honors. All right, Ms. Liss-Riordan. Good morning, Your Honors. I'm Shannon Liss-Riordan on behalf of Appellees. So collateral estoppel unquestionably applies here. I don't think this is even a close argument. The issues were identical. There was a final judgment reached in the state court, and the same party was litigating, and that is Uber. And if you look at the state court decision – If collateral estoppel applies, what's left of the case? One plaintiff can proceed in district court. Yes, Mr. Zucker, for his claims following the 2022 agreement. And is there a class? Well, the district court deferred that issue. It actually did grant a motion for conditional certification, but it requested additional briefing on who might get the notice, and that never got briefed to the district court because of Uber's appeal. So there could be a class, but it would be a much smaller class than originally –  Originally anticipated. Okay. Right. Right. Perhaps. Although I do want to talk about collateral estoppel, but I would also like to talk about the alternate basis to affirm the district court decision below, which is that the Uber drivers are exempt under Section 1 of the FAA. But let me first talk about collateral estoppel for a moment. If you look at the state court decision, it did address the 2020 decision. In Section C on page 4 of the state court's decision, there's a lot of discussion of the 2020 agreement. It says that Uber argues that under the 2022 agreement, plaintiff is still bound by the arbitration provision of the 2020 agreement. The court considers that argument and rejects it. It then later says we don't need to get into the issue of whether the plaintiff actually received and agreed to the 2020 agreement. Then it says, well, even if we do, Uber has not carried its burden because it didn't even attach any records to show that the plaintiff did actually receive and agree to the 2020 agreement. So that was – it was all decided by the state court, and the district court here was correct in recognizing the collateral estoppel effect of it. The argument – the alternate argument that Uber makes that the state court failed to consider the FAA also fails because Uber itself argues that it argued the FAA to the state court. Obviously, the state court rejected that argument because it didn't accept it. Any argument that is not – I think it's a common statement in court decisions that any arguments that are not accepted in the decision that have been raised have been rejected. So Uber had full and fair opportunity to litigate this issue. It failed to win in the state court on the argument that the 2020 provision should have affected how the state court decided the 2022 issue. The state court decided the 2022 issue even considering Uber's 2020 argument, and it lost. So the district court was correct in giving collateral estoppel to that and also the FAA argument. It doesn't matter that the state court didn't talk about the FAA. It was argued to the state court, and the state court didn't think that it changed the decision. Whether that was correct or not is not what is at issue under the doctrine of collateral estoppel. I'm happy to answer any other questions about collateral estoppel, but I would like to talk about the other alternate argument for affirming. My only question on the other avenue – one question I have on the other avenue that's related to collateral estoppel. If we find that Judge Cannelli was correct on collateral estoppel, it's one thing to go on and address FAA exemption for potentially a very large class, but if all that's left is Zurich post-2022 and the FAA – if we find on collateral estoppel, why should we go on to the FAA exemption? Well, so a couple of reasons. So Judge Cannelli did, like I said, grant the motion for conditional certification, but he hadn't decided yet who would actually get the notice. Presumably what he had in mind is that there are other drivers out there who actually opted out of arbitration, who Uber recognizes did. I think they said there are about 500 drivers who opted out of arbitration. So those drivers could be covered – could receive the notice. But we can't issue advisory opinions. No, no, no. And we'd be creating a circuit split. We'd be creating a circuit split in an advisory opinion. No, no, no. Every circuit that's addressed this issue has gone against you. I think we know why – You're talking about the – okay. But now I think you're talking about the next issue. I think you were just asking, Judge Kollar, what the implications would be. I'm just saying that if you were to affirm under our alternate ground, which I'd like to just talk about for a minute why the Seventh Circuit is different from all the other circuits, it could just broaden the range of drivers who might be able to receive the notice. So in the – because right now I think as it stands, I expect that the district court is expecting under Bigger versus Facebook that notice could go out to the 500 or so drivers who opted out of arbitration. If, however, you were to affirm on the alternate grounds and recognize that Uber drivers are exempt under the Section 1 exemption of the FAA, it could be a broader group of drivers who could receive the notice. The reason that the Seventh Circuit is different than the Third Circuit, the Ninth Circuit, and the First Circuit, which have all determined that Uber drivers are not exempt from the FAA Section 1, is because of this court's precedent in Canestra, which said that there is no de minimis requirement for crossing state lines in order to be exempt under Section 1. So in Canestra, 2% of the rides – of the truck drivers' work cross state lines, and this court said that that was sufficient to establish interstate commerce for purposes of the Section 1 exemption. Here, Uber itself says 2.5%. Wouldn't we have to ignore Wallace if we followed Canestra? How do we square Wallace and Canestra? I can tell you that because I argued Wallace before this court just a couple of years ago. This is a different case from Wallace because in Wallace, the focus was whether or not the food that the delivery drivers were delivering was in interstate commerce. That was different from this situation because the food that was – it was determined by this court that the food deliveries were local food deliveries because even if the food products had traveled across state lines before they got to the restaurants, they were converted into different kinds of goods at the restaurants. They were converted from raw food ingredients into meals, and that's what a number of courts have said in rejecting the argument that food delivery drivers are exempt under the FAA. This is a different argument. This has to do with the actual crossing of state lines by this group of workers, which under Canestra, 2% of their work crossing state lines was sufficient, and here Uber admits 2.5% of Uber drivers' work crosses state lines. So that's why it's different here from the other circuits. And also, I just want to note that in Wallace, this court did not really address the U.S. Supreme Court's decision in New Prime, which said that in looking at whether interstate commerce exists for purposes of Section 1 of the FAA and Section 2 of the FAA, they relate to each other. It's the same field. It's the same question. Doesn't Southwest Airlines v. Saxon cause a problem for you if we were to follow the logic that you articulated in Wallace? No, no, no, no, not at all because, I mean, in Saxon, the worker wasn't even crossing state lines themselves, but they were considered to be so closely connected to interstate commerce that the Supreme Court said that that was interstate commerce. Here we have an even better argument than in Saxon because the drivers themselves cross state lines 2.5% of the time. So Saxon only helps us here. And, again, this point that I'm making about New Prime, saying that Section 1 and Section 2, commerce in Section 1 and Section 2 should relate to one another, and they didn't just mention it in passing. There's a whole section of the New Prime decision which discusses how Section 1 and Section 2 discuss a field of commerce. This means that, contrary to what the U.S. Supreme Court may have said in Circuit City, in New Prime the Supreme Court said that Section 1 and Section 2 are to be read in relation to each other for purposes of determining what is interstate commerce. In other words, if this is not interstate commerce for purposes of Section 1, it's also not interstate commerce for purposes of Section 2, and Section 2 is the defining section of what the FAA actually relates to, and Congress wouldn't even be able to legislate in this area if there wasn't some interstate commerce involved. Now, I know there are prior cases, including Circuit City, that talk about commerce being broader for purposes of Section 2 than for purposes of Section 1, but I think those prior cases have been undermined, if not outright reversed, by the U.S. Supreme Court's statements in New Prime that the two are to be read in relationship to one another. And also, even if there's a difference, even if there's some more breadth to the Section 2 commerce than there is to the Section 1, it's not enough just to say, okay, it's always commerce for purposes of Section 2, and it's never commerce or rarely commerce for purposes of Section 1. Where is the dividing line? And shouldn't that be considered or figured out at some point? What would make something commerce for purposes of Section 2 so the FAA can even apply and make it not commerce for purposes of Section 1? Because, again, if you go back to Circuit City, what Circuit City did was it condensed, or you might say restricted, what the breadth of the Section 1 exemption might have been, but it did talk about transportation workers, and so it narrowed the Section 1 exemption to transportation workers. But in New Prime, again, that was discussed and considered, and the question about whether they engaged in interstate commerce, the court seemed to recognize, should be related to or at least considered alongside the question about whether commerce, interstate commerce, is affected with respect to Section 2. I just think this is a very important issue that hasn't been grappled with by any court, and the U.S. Supreme Court said it just five years ago in New Prime. So it would have a big ramification on this case if the court were to also reach this alternate argument because it would allow more drivers to be able to pursue their rights in court because, of course, we know that arbitration is the way that these companies have been avoiding any kind of repercussions for their class-wide violations of workers' rights. It's been a huge problem. It's been going on for years. So I urge the court to consider these arguments. But the collateral estoppel argument, I think, is pretty cut and dry and open and shut. Ground four affirming. Okay. Thank you. Thank you, Ms. Lisserer. Okay. All right. Thank you, Your Honors. Mr. Friedman, we'll give you a minute for rebuttal. Thank you. As an initial matter, Your Honors, I want to very quickly address the FAA issue. Every court that has addressed it for Uber, Singh v. Uber, Capitol v. Uber, Third Circuit, Ninth Circuit has rejected our argument, and this court would have to essentially abandon Wallace v. Grubhub, which has the same tenant. It has to be the central portion. So every court that's addressed it for Uber has rejected it. It's not a good argument. It's been made by her and all over the country and has lost it. Going back to collateral estoppel, I do want to – first of all, I also want to address New Prime. New Prime does not say one and two are the same. In fact, it's the very opposite. It says one – section one is very narrow, section two is very broad, and that was addressed in Wallace v. Grubhub. And lastly, to go back to collateral estoppel, if I may, the court speculated to the application, and she speculated to the application, the state court does not address the FAA at all. We can't speculate and say, well, they knew about it. They rejected it. They did not address the FAA. This district court did exactly the same thing, and it's not simply okay if the same result would have happened. It has to be the identical basis, the identical legal reason here. If the state court had applied the 2020 agreement, they would have applied the language. It said it applies to any past, present, or future dispute, and the 2022 agreement, which is the only thing they focused on, says any previous agreements still apply. We've got to go to that 2020 agreement that the state court did not go to, and we've got to apply the language as written, past, present, or future. This falls within that category. It's a future claim. The 2020 still applies. I'm out of time. We ask that this court respectfully reverse the holding of the district court. Thank you, Mr. Friedman. Thank you, Your Honors. The court is going to take a very brief recess.